(No. 24043.—<span></span>

GRACE HERZBERGER, Appellant, *vs.* EDWARD J. KELLY *et al.* Appellees.

*Opinion filed April 16, 1937.*

LOUIS GREENBERG, and MAYER GOLDBERG, for appellant.

BARNET HODES, Corporation Counsel, and EDWARD F. DUNNE, (JOSEPH F. GROSSMAN, and CASSIUS M. DOTY, of counsel,) for appellees.

Mr. CHIEF JUSTICE HERRICK delivered the opinion of the court:

This case questions the constitutionality of the so-called Permanent Registration law passed on June 6, 1936, (Laws of 1936, fourth sp. sess. p. 33,) by a special session of the Fifty-ninth General Assembly, which for the sake of convenience, is herein referred to as the Fourth Special Session. Such special session came into being on May 19, 1936, by virtue of a proclamation of the Governor issued on May 16. At the time of the call and on the day the

session was fixed to convene, and also at the time the questioned law was enacted, there was already in existence another special session of the Fifty-ninth General Assembly, herein referred to as the Second Special Session, which theretofore, on January 7, 1936, had been called by the Chief Executive for purposes other than those enumerated in the proclamation of May 16, and which latter session had not then been terminated or adjourned *sine die.* This cause was originated by a complaint, later amended, filed in the circuit court of Cook county by plaintiff (appellant here) in her own behalf as a tax-payer and on behalf of all other tax-payers similarly situated, to enjoin the expenditure of public funds by the city of Chicago for the purpose of administering the provisions of article 3-A of the City Election act, as amended, commonly known as the Permanent Registration law. A motion in the nature of a demurrer, made by the defendants, was sustained, and an order entered by the trial court dismissing the amended complaint for want of equity. Plaintiff has appealed directly to this court.

By her pleadings plaintiff admits the registration law was regularly passed by the Fourth Special Session and approved by the Governor; that one of the purposes in the proclamation of the Chief Executive calling such Fourth Special Session was to enact laws pertaining to "(1) The conduct of elections and primary elections and the registration of electors." No point is made that the law so enacted thereunder was not clearly within the purposes stated in the call. Neither is the form of the proclamation questioned, nor that it was duly issued. The charge made by plaintiff is, that during the existence of the Second Special Session the Governor could not, under the constitution, issue any proclamation convening any other special session of the General Assembly for any other purpose whatsoever, and that, in the event an additional special session was called and convened, only the one first convoked

can be deemed lawful, and any law purporting to be enacted by any special session except the one first called, is unconstitutional and void. No prior decisions from this or any other State on the precise question raised have been cited in the briefs of either party nor have we found any.

The determination of the problem must depend primarily upon the extent of, or the limitations upon, the power which the Governor lawfully may exercise under the authority conferred upon him by section 8 of article 5 of the constitution of 1870 which provides: "The Governor may, on extraordinary occasions, convene the General Assembly, by proclamation, stating therein the purpose for which they are convened; and the General Assembly shall enter upon no business except that for which they were called together."

The appellant, in support of her contention that the measure is unconstitutional, singles out the word "purpose" in the section above quoted and asserts that the plain meaning of the word restricts to a single purpose or object the power of the Governor to convene a special session; that such "purpose" was specified by him in his proclamation calling the Second Special Session as being for "the relief of persons who are destitute and in necessitous circumstances," and that the subject of the legislation evidenced by the questioned act, being entirely unrelated to the former subject, could not be considered pending the adjournment *sine die* of the Second Special Session.

As conclusive evidence that the word "purpose" was used advisedly in the singular sense to the exclusion of the plural and must be so construed, the appellant directs attention to the remarks of two members of the constitutional convention of 1870, occurring after the reading of the proposed section in its present form, but before its adoption.

Mr. Medill. "I will ask the chairman of the committee whether he would permit a verbal amendment to make

'purpose' plural stating therein the purposes for which they are convened."

Mr. Skinner. "If the gentleman from Cook [Mr. Medill] would say 'special purposes' I would probably accept his amendment."

Mr. Medill. "I doubt whether that would better it. I think the word ought to be in the plural so as to include more than one purpose for which the assembly may be convened." Debates of the Constitutional Convention of 1870, vol. 1, p. 775.

The suggested amendment was voted down, but if it be argued from the above statements that it was the universal understanding and sense of the convention that a special session might be convened to consider a single object or purpose only, then such impression must be refuted by the words of Mr. Skinner found on the same page of the same Debates, when, in addressing the chairman to propose the addition of the words "which shall be extraordinary only" after the word "convened," he said, "I call the attention of the committee simply to a defect in the provision which I think exists. It is the limiting of special sessions called by the Governor to special acts. It says the Governor is to judge of the extraordinary occasions. The Governor is not required to make his proclamation special. He may in his proclamation say 'The General Assembly is convened for the purpose of taking into consideration the general welfare of the State.' He may by language in his proclamation make it really a general session of the General Assembly so that they can enter upon all subjects of legislation, if his language is sufficiently broad in the proclamation." This suggested amendment also failed of adoption.

To arrive at a proper understanding of the meaning of the section we must seek first to find the thought which it expresses and endeavor to analyse the limitation of the powers granted and the extent of the restrictions, if any,

imposed. It is plain that the nature of the "extraordinary occasions" which may occur and upon the existence of which the Governor may call a special session is not therein defined. The decision as to such question, not either in express terms nor by implication having been vested in any authority other than the Governor, his judgment thereon must, of necessity, be deemed final. The language of our Federal constitution is similar to our own in the employment of the term "extraordinary occasions" to authorize the Chief Executive to call a special session of Congress. That term, however, neither in the Federal constitution nor in any State constitution containing similar language, has ever been construed as synonymous with urgent necessity. On the contrary, by settled usage and custom, the expression has been taken to afford ample authority for the executive, in the exercise of his discretion, to convoke a special session of the legislative branch of government to act upon any subject which, individually, he deemed of importance for the welfare of those he serves. In *Marbury* v. *Madison,* 1 Cranch, 137, Chief Justice Marshall in speaking of the political power of the executive said, "He is to use his own discretion and is accountable only to his country in his political character and to his own conscience and whatever opinion may be entertained of the manner in which the executive discretion may be used, still there exists no power to control that discretion." No authority to review the exercise of the discretionary power vested in the Governor by the constitution was, by that instrument, seated in the judiciary. The only remedy provided for a violation by an executive of his constituted authority is by impeachment. The power to convene the legislature may be exercised by the Governor not only on an extraordinary occasion but as clearly stated, on "extraordinary occasions." It is equally obvious that the words of that section of the constitution do not purport to fix the interval of time, if any, after the power has once been ex-

ercised, before it may again lawfully be called into being. No construction of the language used, however tortuous, can supply the words necessary to evince a conclusive intention to limit the granted power to a single use. If the executive may exercise it once, it is because the power to do so is conferred upon him by the constitution. If it may again be exercised it is through the same grant of power. Neither history nor human experience can furnish any criterion by which it may be predetermined with certainty when a so-called "extraordinary occasion" may arise. The same factors can lend no assurance that, if such an occasion does spring up, it may not be the precursor of many successive, similar events of equally serious import to the people's welfare. Any one or more of such emergencies might imperatively demand immediate legislative action to meet the pressing need or threatened danger. No inherent power is possessed by the legislature to convene itself in any such situation. The executive, alone, is clothed with necessary power to achieve that end. If, therefore, the exercise of the executive discretion as to the need for legislative action must be held in abeyance at any given time, however impelling the then present necessity, solely because the assembly is then in special session under a previous call, the very power granted the Governor to meet a sudden exigency, however serious its possible consequences, will be nullified. We are unable to attribute to the provisions of the section of the constitution in question any such want of power in the executive. If, then, he possesses the authority to convene the General Assembly in special session at any time when, in the exercise of his official discretion, he deems the occasion warrants such action, it must follow as a necessary corollary that any laws regularly passed at such special session so convened, which are within the purposes expressed in the proclamation calling it, are impervious to the attack of want of legal sanction in their enactment.

The appellant cites many cases from other jurisdictions holding that the legislature when convened in special session may not act legally upon any subject not expressed in the proclamation under which it is convoked, or germane thereto. That, however, is beside the point. The subject matter of the challenged act was clearly stated in the Governor's call. The enactment of the so-called Permanent Registration law was accomplished by the General Assembly acting within the scope of its constitutional authority.

The judgment of the circuit court of Cook county was correct and is affirmed.

*Judgment affirmed.*